UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kelly Frithiof SUNDBERG,<br><br>                Petitioner,<br><br>v.<br><br>Harold OREOL,<br><br>                Respondent. | Case No. 16-cv-3127-WQH-AGS<br><br>**SECOND REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS (ECF No. 13)** |

For the second time, the timeliness of Kelly Sundberg's federal habeas petition is before this Court. Last time, the Court recommended that the petition be dismissed as untimely. After being appointed counsel and objecting to that recommendation, the issue was returned to this Court for a further recommendation. Despite counsel's best arguments, Sundberg's petition remains 16 years late and equitable tolling does not excuse that untimeliness. So, the Court again recommends that his petition be dismissed.

## **BACKGROUND**

Sundberg's torturous journey to federal court began with his acquittal. On February 11, 1999, a California state trial court found him not guilty—by reason of insanity—of four felony crimes of violence, including attempted murder. (ECF No. 14-2, at 1.) A few weeks later, after finding that Sundberg had not recovered his sanity, the trial court committed him to Patton State Hospital. (*Id*. at 2; ECF No. 14-4, at 1.)

1

The relevant procedural benchmarks are outlined in the below chart:

| Date | Event | Inactivity Period |
|---|---|---|
| March 7, 1999 | Judgment Entered | |
| | No Direct Appeal Filed Within 60-Day Time Limit for Seeking Direct Review | |
| May 6, 1999 | Judgment Becomes Final[1] | |
| | **NO ACTIVITY (Abandoned by Retained Counsel)** | **4 years, 10 mos., 27 days** |
| May 6, 2000 | Federal Habeas Filing Deadline Expires | |
| | **NO ACTIVITY (Abandoned by Retained Counsel)** | |
| April 2, 2004 | First State Trial Court Habeas Petition Filed | |
| *Unknown (but before 5/10/06)* | First State Trial Court Habeas Petition Denied | |
| May 10, 2006 | Second State Trial Court Habeas Petition Filed | |
| July 5, 2006 | Second State Trial Court Habeas Petition Denied | |
| | **NO ACTIVITY** | **5 years, 10 mos., 17 days** |
| May 22, 2012 | Third State Trial Court Habeas Petition Filed | |
| June 6, 2012 | Third State Trial Court Habeas Petition Denied | |
| | **NO ACTIVITY** | **4 years, 1 month, 22 days** |
| July 28, 2016 | Fourth State Trial Court Habeas Petition Filed | |
| Sept. 6, 2016 | Fourth State Trial Court Habeas Petition Denied | |
| Sept. 14, 2016 | State Court of Appeal Habeas Petition Filed | |
| Sept. 19, 2016 | State Court of Appeal Habeas Petition Denied | |
| Oct. 24, 2016 | State Supreme Court Habeas Petition Filed | |
| Dec. 14, 2016 | State Supreme Court Habeas Petition Denied | |
| Dec. 19, 2016 | Federal Habeas Petition Filed | |

(ECF No. 28, at 2-3.)

In this Court's first Report and Recommendation, the Court noted that Sundberg's federal habeas petition was filed 16 years late, and that there was no basis for statutory

---

[1] Because Sundberg never tried to appeal to a "state court of last resort," the U.S. Supreme Court "would have lacked jurisdiction over a petition for certiorari"; thus, the "90-day period for seeking certiorari" is ignored in determining when his judgment became final. *Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012) (citations omitted).

tolling. (ECF No. 28, at 3-5.) As for equitable tolling, the Court accepted Sundberg's explanation for not seeking any habeas review from 1999 to 2004—that is, his retained attorney abandoned him and was later disbarred. (*Id*. at 2, 4.) But the Court pointed out that after this initial, well-justified delay, Sundberg had two more periods of extended habeas inactivity—of nearly six years and then another four years—for which he offered no explanation. (*Id*. at 2-4.) Based on these last two stretches of delay, the Court found that Sundberg had not diligently pursued his rights and thus equitable tolling was unavailable. (*Id*. at 4.)

Although Sundberg concedes that he is ineligible for statutory tolling, he now asserts numerous additional arguments to justify equitable tolling. (*See generally* ECF Nos. 32, 34, 38, 45, 52.)

## **DISCUSSION**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), with limited exceptions, a person confined in state custody must file any federal habeas corpus petition within one year from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d). This one-year time limitation governs judgments of not guilty by reason of insanity that result in confinement. *See Duncan v. Walker*, 533 U.S. 167, 176 (2001) (holding that federal habeas review extends to "a state court's commitment of a person to a mental institution upon a verdict of not guilty by reason of insanity" (citation omitted)).

The AEDPA's one-year statute of limitations is "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (citations omitted). But Sundberg qualifies for such tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 649 (citation omitted). The Ninth Circuit has cautioned that "equitable tolling is unavailable in most cases and is appropriate only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Mirando v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (citations and quotation marks

omitted). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Id*. The petitioner "bears the burden of showing that equitable tolling is appropriate." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005) (citation omitted).

With these principles in mind, the Court addresses each of Sundberg's arguments for his delay in seeking federal habeas relief.

**A.     Actual Innocence**

Sundberg asserts that he is actually innocent of attacking his father, which would excuse his failure to file within the AEDPA's statute of limitations. *See Lee v. Lampert*, 653 F.3d 929, 931 (9th Cir. 2011). To qualify under the actual-innocence doctrine, the petitioner must supply "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 938 (citation omitted). Petitioner then bears the burden of proving that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Sundberg's actual-innocence claim fails at the very first step, as he offers no new evidence whatsoever. Instead, he merely makes a few disparaging and uncorroborated statements about the victim (his now deceased father) and argues that the trial evidence failed to establish the necessary element of premeditation. (*See* ECF No. 1, at 11 (referring to his father as "a 77 year old mental patient who refused to take his medication" who "[m]ade up quite a story"); ECF No. 52, at 12.) None of this qualifies as "new reliable evidence . . . that was not presented at trial." *See Lee*, 653 F.3d at 938 (citation omitted).

Even if the Court deemed these contentions to be new evidence, there is nothing in the record to support them. Sundberg offers nothing but unsupported allegations against his father. Likewise, the Court has no basis to accept Sundberg's claim that there was insufficient premeditation evidence. He offers no guilt-phase transcripts, instead relying only on what appears to be a preliminary-hearing transcript. According to his appointed counsel, the relevant trial transcripts no longer exist, because "California only required [the

court reporter] to keep the stenographies for 10 years and these records were destroyed years ago." (ECF No. 45, at 3 n.14.)

Thus, Sundberg has failed to carry his burden of supplying new evidence that would have stopped a reasonable fact finder from convicting him.

## B. Miscarriage of Justice

Under the banner of the miscarriage of justice exception, Sundberg marches out many procedural grievances with his state proceedings. But this doctrine applies only to claims of actual innocence, not "procedural violations." *See Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 935-36 (citation omitted).

Even if such procedural complaints could support equitable tolling, Sundberg fails to identify any manifest injustice in the California state procedures. Each criticism, in fact, seems to spring from a misunderstanding of California's procedural safeguards regarding an acquittal by reason of insanity. Because Sundberg places so much emphasis on these alleged irregularities, the Court will review each of these miscarriage-of-justice complaints in the context of the proceedings below.

### 1. *Guilt Phase—Right to Contest Factual Guilt*

First, Sundberg argues that by pleading not guilty by reason of insanity, "he was conceding his factual guilt for the offense," "waiving his right to trial," and "removing any possibility of judicial review of his factual guilt." (ECF No. 45, at 5, 7; ECF No. 52, at 7.) But Sundberg also asserts that he made alternative pleas of "not guilty" and "not guilty by reason of insanity." (ECF No. 1, at 2; ECF No. 14-5, at 2.) Upon such joint pleas, a California state trial court "conducts a bifurcated trial and the issues of guilt and sanity are separately tried. In the first phase of trial, the defendant is tried on his or her factual guilt without reference to the insanity plea." *People v. Dobson*, 161 Cal. App. 4th 1422, 1431 (2008) (citations omitted); *see also* Cal. Penal Code § 1026(a).

5

Here, Sundberg in fact received such a guilt-phase trial, which lasted two days. On February 9, 1999, after Sundberg waived his right to a jury, the state court began a bench trial on the issue of factual guilt. (*See* ECF No. 45-4, at 1, 3.) Four witnesses testified and were examined, and both sides offered exhibits and stipulated to certain expert testimony. (*Id.* at 3-4.) After the prosecution rested, Sundberg moved for a judgment of acquittal due to an alleged lack of premeditation—an argument that goes to factual guilt—which the court denied. (*Id.* at 4.) The guilt-phase trial continued on February 10. (ECF No. 45-4, at 4; ECF No. 45-6, at 1.) Although the Minutes from the trial's second day are not in the record, the court presumably found Sundberg factually guilty, as it moved on to the sanity phase on the third day, February 11. (*See* ECF No. 45-6, at 1.) So, notwithstanding Sundberg's arguments, he did not lose his opportunity to defend himself as to factual guilt.

### 2. *Conclusive Presumption of Sanity (During Guilt Phase, Not Sanity Phase)*

Next, Sundberg claims "structural error" because after an insanity plea, California law "requires a conclusive presumption that a person was sane at the time of the offense." (ECF No. 45, at 3; ECF No. 52, at 11.) Relying on *Patterson v. Gomez*, 223 F.3d 959, 966 (9th Cir. 2000), Sundberg argues that this "is patently unconstitutional." (ECF No. 45, at 3, 3 n.15; ECF No. 52, at 11.) But *Patterson* actually blessed this presumption in the context of California's bifurcated system of adjudicating guilt and sanity.[2] That is, it held that "the trial court *could have* instructed the jury to presume that the defendant was sane," so long as it also took various steps to avoid jury confusion. *Patterson*, 223 F.3d at 967 (emphasis added). For example, without proper explanation, the *Patterson* court feared that jurors might incorrectly assume that the sanity presumption negated not just insanity, but also lesser mental defects that defendants might rely on to undermine *mens rea*. *Id.* at 965.

These jury-confusion concerns are irrelevant here because Sundberg was tried by a

---

[2] The conclusive presumption of sanity only applies during the guilt-phase trial. Cal. Penal Code § 1026(a). During the sanity phase, "the burden is upon the defendant to prove by a preponderance of the evidence that he was insane at the time of the offense." *Dobson*, 161 Cal. App. 4th at 1431.

judge alone, not a jury. Unlike *Patterson*, Sundberg's fact finder is presumed to understand all these legal nuances. *See Lambrix v. Singletary*, 520 U.S. 518, 531-32, 532 n.4 (1997) (holding that judges, unlike jurors, "are presumed to know the law and to apply it in making their decisions" (citation omitted)). Thus, while the judge conclusively presumed Sundberg to be sane during the February 9-10 guilt phase, he obviously dropped this conclusive presumption during the February 11 sanity phase, as the verdict was not guilty by reason of insanity. (*See* ECF No. 45-6, at 1.)

### 3. *Consequences of Post-Acquittal Commitment*

In the way California deals with criminal defendants who are acquitted due to insanity, Sundberg identifies two alleged structural errors. First, he believes that "the insanity plea *mandates* the maximum term of incapacitation" and that his insanity finding "would confine him for life." (ECF No. 52, at 12-13.) He is wrong. Defendants found not guilty by reason of insanity must be committed to a state hospital, but they may petition for release due to restored sanity (or for outpatient placement) after 180 days. *See Dobson*, 161 Cal. App. 4th at 1432 (citing Cal. Penal Code § 1026.2(d)); Cal. Penal Code § 1601(a). At worst, they will be released at the expiration of "the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted." *Dobson*, 161 Cal. App. 4th at 1432 (citing Cal. Penal Code § 1026.5(a)(1)). The trial court here correctly committed Sundberg to "the state mental hospital for a minimum term of 180 days and a maximum term of life," plus six years. (ECF No. 45-6, at 3.)

Second, according to Sundberg, California law mandates that if he recovers his sanity, he must still be "institutionalized until there is some right to a jury trial" or "transferred to the sheriff for further judicial proceedings." (ECF No. 45, at 7.) Again, he misunderstands California law. "A successful insanity plea relieves the defendant of all criminal responsibility." *Dobson*, 161 Cal. App. 4th at 1432. An "insanity acquittee" has nevertheless "demonstrated dangerousness," and thus California law requires "commitment of the defendant to a state hospital . . . for the purpose of treatment, not punishment." *Id.* (citations and quotation marks omitted). Because he is not criminally

7

responsible, if Sundberg secures release due to recovered sanity or if he qualifies for outpatient placement, he would not face a jury trial or any further criminal judicial proceedings.

### 4. *Right to Appeal*

Finally, Sundberg argues that he was "*ineligible* to appeal" his acquittal by reason of insanity. (*See* ECF No. 52, at 7, 7 n.28.) While this was once true in California, it has not been the law since 1968, long before Sundberg's case. Sundberg relies on *People v. Mallory*, 254 Cal. App. 2d 151 (1967), which held that "[a] commitment to a state hospital after a finding of not guilty by reason of insanity is not appealable," based on an old statutory provision. *Id.* at 153. But a year after the *Mallory* decision, "the Legislature amended that section to include a 'commitment of a defendant for insanity' as an appealable final judgment." *People v. Coleman*, 86 Cal. App. 3d 746, 750-51 (1978). This was the case throughout Sundberg's trial proceedings, and it is still the case today. *Compare* Cal. Penal Code § 1237(a) (1995) ("An appeal may be taken by the defendant . . . [f]rom . . . the commitment of a defendant for insanity. . . ."); *with* Cal. Penal Code § 1237(a) (2016) (same). Indeed, the trial court here specifically advised Sundberg "regarding his appeal rights." (ECF No. 45-6, at 3.)

In any event, none of Sundberg's procedural "miscarriage of justice" arguments, individually or collectively, establish any procedural error whatsoever. Even if these contentions amounted to procedural irregularity, it would not equitably toll his federal habeas filing deadline, absent proof of actual innocence. *See Johnson*, 541 F.3d at 937.

### C. **Unavailability of Legal File**

For some unspecified period, Sundberg alleges that he lacked access to his defense attorney's file and his case transcripts. "[I]t is 'unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period' without access to his legal file." *Espinoza-Matthews*, 432 F.3d at 1027-28 (alteration and citation omitted). While this would satisfy the "extraordinary circumstance" prong of the equitable tolling analysis, Sundberg still fails to show that he was "pursuing his rights diligently."

8

*See Holland*, 560 U.S. at 645. He has not explained when he requested his case file, what steps he took to secure it, or how this stopped him from filing his federal petition for over 16 years—especially since he successfully filed multiple state habeas petitions during this same time frame. Indeed, his state petitions suggest that he had access to at least some case materials. For instance, in his second state petition, Sundberg disputed evidence in minute detail, including how many "drops of blood" were on a crime scene photograph, and alleging that "the judge quoted from a falsified transcript of Dr. Fomaciari's pre-trial testimony." (*See* ECF No. 1, at 28.)

## D. Denial of Transcripts

On a similar note, Sundberg maintains that he "was denied even the transcripts of his proceeding which is grounds for tolling." (ECF No. 45, at 6, 6 n.27 (citations omitted).) Yet the trial court explicitly ruled that "right of access of the Petitioner [to the transcripts] is not being denied." (ECF No. 45-5, at 2.) Rather, the court found that Sundberg "has not provided any factual basis" for obtaining transcripts at taxpayer expense, and it refused to provide him free copies until he made a sufficient factual showing. (*Id.* at 1.) In the meantime, the court suggested that Sundberg "may have a friend or relative review the file and have copies made of whatever is contained therein—for a fee." (*Id*. at 2.) Sundberg has not shown that he ever tried to make the required showing or pay the normal fees, so any lack of transcripts cannot justify equitable tolling.

## E. Lack of Legal Training and Law Library

Sundberg points to both his legal inexperience and his lack of access to a law library to justify his cumulative decade of habeas inactivity. These common problems, however, do not constitute extraordinary circumstances for equitable tolling, especially since these same restrictions did not prevent Sundberg from filing multiple state petitions. *See Ramirez v. Yates*, 570 F.3d 993, 998 (9th Cir. 2009) (rejecting equitable tolling based on lack of a law library, when petitioner filed state petitions without access and he "offer[ed] no explanation of how or why his restricted library access made it impossible for him to file a timely § 2254 petition").

### F. Mental Competency Examinations

Sundberg also asserts that his pretrial proceedings justify equitable tolling of his federal habeas deadline. Specifically, he was asked about the facts of his case in the mental competency examinations before his trial, which he claims violated his Fifth Amendment rights. Even assuming this were true, it would not justify equitable tolling: it is not an extraordinary circumstance that prevented Sundberg from *filing a habeas petition* sometime after his trial and commitment. *See Holland*, 560 U.S. at 649. At best, this point might serve as an additional substantive claim for relief, but it does nothing to move the needle on the question of timeliness or equitable tolling.

Even if the Court reinterprets this argument in the best possible light for Sundberg—that is, his mental illness prevented him from filing a timely federal habeas petition and the facts surrounding this mental competency examination are evidence of the severity of his mental illness—he still fails to qualify for equitable tolling. "Petitioner has not shown (or presented enough evidence to require an evidentiary hearing to determine) that his mental and physical problems prevented him from filing his petition on time." *Tresevant v. Ryan*, No. CV-09-01255-PHX-ROS (MHB), 2010 WL 4960011, at *3 (D. Ariz. Dec. 1, 2010) (citation omitted). "A showing of mental illness (or physical disabilities) alone will not necessarily toll the limitation period." *Id.* Here, as in *Tresevant*, Sundberg has "demonstrated his ability to manage his own affairs by, among other things," filing repeated state post-conviction petitions. *See id.* Also, Sundberg's petition relies heavily on the fact that he has "no severe mental illness" to support his contention that the trial judge erred in finding him not guilty by reason of insanity, and he attached several reports to his petition suggesting that the majority of those who examined him before his trial concluded he had no severe mental illness. (ECF No. 1, at 10, 13.) So, he has not met the heavy burden to justify equitable tolling.

### G. The Suspension Clause

Next, Sundberg argues that the Constitution's Suspension Clause bars this Court from enforcing the statute of limitations against him. (*See* ECF No. 52, at 8-9); *see also*

U.S. Const. art. I, § 9 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."). To the extent he is arguing that 28 U.S.C. § 2244(d)'s one-year limitation always constitutes a violation of the Suspension Clause, he is wrong. *See Green v. White*, 223 F.3d 1001, 1003-04 (9th Cir. 2000) ("We join other circuits that have considered this issue and hold that [§ 2244(d)'s] one-year limitation does not constitute a per se violation of the Suspension Clause."). To the extent he is simply repackaging his equitable tolling argument as an as-applied Suspension Clause argument, it is rejected for the same failure to show diligence discussed throughout this opinion. *See Green*, 223 F.3d at 1004 (noting that the AEDPA's time limitation "does not violate the Suspension Clause" because, in part, it is "subject to equitable tolling" if petitioners "diligently pursue [their] claims" (citation omitted)).

## H. Abandonment by Appellate Attorney

Finally, Sundberg reiterates his claim that his appellate counsel abandoned him without filing a direct appeal and was later disbarred for abandoning similar individuals. As this Court previously recognized and the government concedes (*see* ECF No. 46, at 1), this abandonment may qualify as a sufficiently extraordinary circumstance to meet one prong of *Holland*'s equitable-tolling test. But Sundberg cannot meet the other prong of the analysis: diligent pursuit of his rights. When Sundberg's second state habeas petition was denied in 2006, he certainly had the means to file a federal petition and he understood that no one else would do it for him. Yet he waited nearly six years before filing his third state petition, and then another four years before filing his fourth state petition. Even ignoring all the other delays, this ten-year gap of inactivity—after Sundberg demonstrated an ability to file his own collateral attacks—cannot qualify as diligent pursuit of his rights. *See Taylor v. Filson*, 692 F. App'x 821, 822 (9th Cir. 2017) (denying equitable tolling, based in part on the fact that the prisoner, who had "mental health issues," had "filed two state post-conviction actions, indicating that he had the means to file a federal action").

Despite both Sundberg and his newly-appointed counsel filing several briefs seeking equitable tolling since this Court's last opinion, neither has explained this decade of delay

or provided evidence to show that Sundberg was diligently pursuing his rights during this span. Sundberg mentions that, at some point during the 16-year post-commitment period, the "public defender sent a large box of evidence to the innocence project" at his request and that "they" (presumably the Innocence Project) worked on his "case for a number of years" until they "ran out of funding." (ECF No. 34, at 2.) At some point, he also "wrote Innocence Matters," "USC Law School," the "ACLU," and an attorney, but none were able to take up his case.[3] (*Id.*) But Sundberg does not identify when any of this happened, how long it took, or what he did during his other years of inactivity. Without more, Sundberg falls far short of his burden to produce evidence that he was diligent throughout the relevant decade-long period of habeas inactivity.

## **CONCLUSION**

Because Sundberg filed his federal habeas petition more than 16 years after the statute of limitations expired, and insufficient tolling is available, this Court again recommends that respondent's motion to dismiss be **GRANTED** and that the petition be **DISMISSED** with prejudice.

By March 13, 2019, the parties must file any objections to this report. *See* 28 U.S.C. § 636(b)(1). Upon being served with any objections, the party receiving such objections has 14 days to file any response. Fed. R. Civ. P. 72(b)(2).

Dated: February 27, 2019

Hon. Andrew G. Schopler
United States Magistrate Judge

---

[3] In 2015, Sundberg also apparently sought help from Legal Services for Prisoners with Children. (*See* ECF No. 1, at 12.)

12